# Exhibit 1

1/28/05

# MICCOSUKEE TRIBE OF INDIANS OF FLORIDA
## SPECIAL GENERAL COUNCIL MEETING
### THURSDAY, FEBRUARY 2, 1995

1. ROLL CALL

2. APPROVAL OF AGENDA

3. APPROVAL OF MINUTES

4. AAR PROJECT - Jimmy Bert

5. MIBG REPORT, COURT UPDATE

6. FDOT Report

7. FINANCE

8. GAMING TRIPS
   Foxwoods Casino-Connecticut
   Silver Star Casino-Mississippi

9. MEETINGS
   Assistant Secretary of Interior
   New Lobbyist Bill Ott
   Health Retreat
   Business Council Training
   USET Meeting

10. HOUSING

11. MEMBERSHIP/RELINQUISHMENT APPLICATIONS

12. MARRIAGE RECOGNITION/DISSOLUTION OF MARRIAGE

13. GUARDIANSHIP APPLICATIONS

14. COUNCILMEN REPORTS

15. GENERAL DISCUSSION



EXHIBIT

92

L000333
L000333

MICCOSUKEE TRIBE OF INDIANS OF FLORIDA
SPECIAL GENERAL COUNCIL MEETING
THURSDAY, FEBRUARY 2, 1995
10:00 A.M.

Item #1. Roll Call

A Special meeting of the Miccosukee General Council convened at the Chickeechobee Council Grounds on Thursday, February 2, 1995. Chairman Cypress announced quorum had been achieved at 10:05 a.m., with 25 voting members present and five clans represented.  The clans represented were as follows:  Wind, Bird, Panther, Otter and Tahkoshathee.

Kathy B. Huggins advised General Council that in consideration of the infirmed and elderly, the meeting should proceed quickly.  She also asked General Council to keep their remarks to the topic at hand.

Chairman Cypress announced the following Officers of the Tribe present:

| | |
|---|---|
| Billy Cypress | - Tribal Chairman |
| Jasper Nelson | - Assistant Chairman |
| Jerry Cypress | - Lawmaker |
| Max Billie | - Treasurer |
| Andrew Bert, Sr. | - Secretary |

Recording Secretaries for the meeting were Evelyn S. Osceola, Tribal Administrative Coordinator, Marla Sanders, Assistant Tribal Administrative Coordinator, DeeDee Kelly, Lawmaker's Secretary and Diane T. Cypress, Assistant Chairman's Secretary.

Chairman Cypress announced the Agenda had the wrong date and should be corrected before proceeding with the meeting.  He requested it be done immediately.

While the Agenda was being corrected, Connie Jim stated she would like to be added to the Agenda as she had remarks to make pertaining to her job.

Chairman Cypress stated she would be given time during General Discussion.

Agnes J. Cypress stated she also would like to be added to the Agenda and it would be regarding Health Departmwnt'and the TOW's.

1

L000334
L000334

Sgcmtg.2/2/95

Chairman Cypress stated she would also be given time during General Discussion.

Item #2.  Approval of Agenda

With the distribution of the corrected Agenda, Chairman Cypress requested motion for approval.

Andy Buster moved to accept the Agenda as read; seconded by Connie B. Jim.  Motion carried with a vote of 13 for, 00 against and 00 abstentions.

Item #3.  Approval of Minutes

Chairman Cypress reported a meeting was held for the reading of the Thursday, November 3, 1994 Minutes.  He added there were few people present and encouraged tribal members to attend these meetings.  He requested motion for approval if there were no corrections noted.

Betty H. Osceola stated she had not been present for the reading but had received a copy for her own review and there were some errors that needed to be corrected.  She stated she had not said what was written on page 11, paragraph 4.  She added on page 18, paragraph 1, she had asked if the father had Miccosukee or Seminole blood or if the father were known.

Chairman Cypress stated the tribe may come to where they request both parents names be on the enrollment application to ensure the blood quantum is met.  If the names are not provided then the application would not be considered.

Betty H. Osceola stated on page 22, paragraph 6, she had stated General Council had already addressed this issue and their ruling should stand.  This should not have to be brought back to General Council again since there were more tribal members present for that meeting and there were less tribal members present for this meeting.

Chairman Cypress stated these errors will be corrected as noted. He requested motion for approval of Minutes with corrections noted.

Betty H. Osceola moved to approve the November 3, 1994 Minutes with the corrections noted; seconded by Agnes J. Cypress.  Motion carried with a vote of 14 for, 00 against and 01 abstention.

Item #4.  AAR Project - Jimmy Bert

Chairman Cypress reported Mr. Bert had dissolved his partnership with Howard Tommie of the Seminole Tribe.  The Business Council and

2

L000335
L000335

Sgcmtg. 2/2/95

Mr. Bert were working on finalizing the details of the contract.
The attorneys for both parties have reviewed the drafted contracts
and submitted and items that require revisions.  The background
investigation of Mr. Bert is being done at this time.  The
attorneys for the Tribe are looking out for our best interest but
Mr. Bert is a tribal member, therefore no major problems are
anticipated.  He would not do anything to adversely affect the
tribe or himself.  After the contract is finalized and signed by
both parties, it will be sent by overnight mail to BIA for their
review.  If an answer is received quickly then Mr. Bert should be
able to start this project soon as he is anxious to begin.

Chairman Cypress reported on the status of Sonny Billie's lease.
He stated Business Council has not heard anything from Mr. Billie
in a while.  At the last meeting Mr. Billie had said it would be a
corporation and he was asked to submit papers for this but to date
has not.  If Mr. Billie delays action on this any further then
Business Council may ultimately revoke the lease agreement.

Chairman Cypress stated when tribal members open airboat concession
stands they should purchase insurance coverage to protect
themselves in case of accidents.  He added there had been an
accident at one of the airboat concessions and the customers fell
in the water.  The customers are now threatening to sue the owner
because of the accident and the way they were treated after the
accident.  In the future the customers could try to sue the tribe
assuming we would be responsible since the owners are tribal
members.  He added in the future Business Council will be checking
with the individual owners to ensure they have the coverage.  If
they fail to comply with the request, Business Council could ask
them to close the business.  He stressed the importance of having
qualified drivers and to ensure they do not consume alcoholic
beverages while working.  He added Business Council was only
looking out for their benefit and to insure their livelihood.

Alice J. Osceola stated when a vehicle is purchased the dealership
will not release the vehicle until insurance coverage is verified
and Business Council should do the same with these businesses.  She
understands the point Business Council is making and she agrees
with it.

Chairman Cypress stated life jackets, first aid kits and emergency
supplies should be kept on the premises.  He added the customers in
the accident were not treated respectfully and left angry.  Non-
indians think all Indian tribes and their members have alot of
money due to the Gaming halls and they will look for ways to get
this money from us.

3

L000336
L000336

Sgcmtg.2/2/95

Chairman Cypress informed General Council that Mr. Jimmie Bert would be having a ground breaking ceremony and luncheon at the AAR area he has leased. The ceremony would be at 12:00 p.m. with lunch being served at 1:00 p.m. Everybody was invited to the ceremony.

Item #5.   MIBG Report, Court Update

Chairman Cypress stated Dexter Lehtinen, Tribal Attorney would be giving an update regarding these two issues but he would like to make a brief report about the Business Council trip to Connecticut to visit the Foxwoods Casino owned and operated by the Mashentucket Pequot Tribe. He stated their enrollment applications are not screened and blood quantum is not taken into consideration. Therefore the enrollment is quite high. They make alot of money from their casino and are saying they would be willing to pay the taxes being imposed. The other Indian tribes say they admire the way the Miccosukee Tribe still holds onto their cultural beliefs, maintains their traditional ways and insures the blood quantum of enrollment applicants.

Mr. Lehtinen reported on the operations of MIBG. He stated for the month of November the net income was $4.4 million. Last time it was $2.4 million, MIBG is making more profit now. The business is doing better from last year.

He added MIBG is conducting drug screening on the employees and as a result three employees have been terminated. As a result of the surveillance cameras being installed three drug trafficking arrests have been made. The arrested persons were not employees. They knew drugs were being sold in the parking lot but did not have proof until the cameras were installed and now are taking action.

He added promotion is being done for MIBG. They also receive free publicity when big pay outs are made and the spanish radio and television cover it. The spanish speaking stations are the major source of promotion with larger amounts of viewers.

Court update.

Mr. Lehtinen reported the tribe's lawsuits against TPL are still in litigation. It has now reached the 11th Circuit of Appellant Court in Atlanta, Georgia. He added the Government and the State are still maintaining the Video Pull Tab Machines located at the Indian owned Gaming halls are Class III. MIBG and other tribes still maintain the Video Pull Tab Machines are Class II. The U.S. Supreme Court could rule the Indian Tribe's do have the right to sue the States. But if ruled against then it would have to be taken to the Secretary of Interior. He added 55 additional Video Pull Tab Machines have been purchased and placed at MIBG.

4

MICC 01495

L000337
L000337

Sgcmtg. 2/2/95

Mr. Lehtinen reviewed the new law placing taxation on payments made to tribal members from Indian Gaming profits. The Government had said they would never tax income derived from tribal lands but it has never been clearly defined legally. The Indian tribes look at the wording in a different view than the government. It is not being interpreted by the IRS as we do, therefore they have enacted this new law. He reiterated profits dispersed to tribal members from profits made on tribal lands should not be taxed.

Mr. Lehtinen reported tribal members will be receiving two separate checks at this Trust Fund distribution. One will be with the gross receipts and one will be the tax amount due which he urged tribal members to deposit so they may use to pay the taxes when due. He added he was not addressing the form of way the tribal members should file their taxes but the way the tribe will be handling their Trust Fund Distribution. They have started setting aside 6.5% for this in a different account.

Chairman Cypress reiterated Mr. Lehtinen's report. He added tribal members are reporting the Trust Fund payments when they apply for credit. He urged tribal members to refrain from this. Administration Office receives calls from the businesses to verify these payments and they are informed they are not aware of it in order to protect the tribal members. If this keeps happening then it could lead to where it affects the other assistance monies the tribal members receive from federal agencies.

Chairman Cypress reported Mike Hernandez, Finance Director, does the Income Tax returns for some of the tribal members was unsure if he was to add the Trust Fund taxes or not. He had informed him to do the Income Taxes as he always has until he was informed other wise.

Alice J. Osceola asked if these Trust Fund payments are not reported, the individual does not have to report it on their tax returns.

Chairman Cypress stated that was correct, it does not have to be included on the tax return.

Chairman Cypress reported the tribe had paid the state on sales taxes but after review it was stopped. The state has sued the tribe in order to try and collect these monies. The tribe informed them this would not be done and as a result both parties have been suing each other since. It is still in litigation at this time.

Mr. Lehtinen read and summarized the Gross Receipts Tax Ordinance. He explained approval for this to be enacted would have to come from General Council.

5

L000338
L000338

Sgcmtg.2/2/95

Alice J. Osceola asked if what was being discussed was clear to all tribal members.

Lois Billie asked for clarification.

Chairman Cypress reiterated Mr. Lehtinen's report/summary. As stated before the tribal members would be receiving two checks.

Colley Billie asked if MIBG was paying tribal taxes as the other tribal enterprises were.

Chairman Cypress stated Business Council had imposed a 6.5% tribal tax levy on MIBG.

Colley Billie asked what will happen to the tax monies being set aside in a separate account for the taxes.

Chairman Cypress stated Business Council will keep General Council apprised if there is any other information forthcoming. He added after all is straightened out then monies could come back to the tribe.

Colley Billie stated after this is straightened out and if funds are returned, will Business Council be the ones to oversee the use of the funds. He asked this as Business Council could use the funds for other projects instead of what it was designated for.

Chairman Cypress stated this would not be done as the monies would be placed in a separate designated account. He added the monies could be used to pay the taxes due for each tribal member. If any of the tribal members have any problems arising from the tax situation then the tribe will help with the legal expenses and the tribal attorney will be available to help. He added that in the future if General Council wishes then they can abolish the Ordinance being discussed, if it is passed.

Chairman Cypress requested action on motion previously made.

Motion carried with a vote of 22 for, 00 opposed and 03 abstention.

Item #6. FDOT Report

Dexter Lehtinen updated General Council on the status of the tribe's lawsuit against FDOT. Report, comments and questions are as follows.

Mr. Lehtinen reported General Council had approved the conceptual agreement with FDOT at an earlier General Council meeting. Chairman Cypress was to have signed the agreement as long as Water

6

L000339
L000339

Sgcmtg.2/2/95

Management would not use this against the tribe in settling any of the lawsuits we have pending against them.  FDOT did not want to sign until some minor items were settled.  These have been worked out and is proceeding.  The tribe will be receiving $2.8 million to be placed in escrow.  This amount is for the construction of the interstate off ramps.  This does not mean the money has to be used for the construction of the ramps.  The tribe can use the money for other items.  The money in the account will be collecting interest until such time the tribe finalizes the agreement and is agreed to by all parties.  This is virtually the same agreement General Council approved with minor wording changes and clarification on some items.  The state will be applying for the permits and do not anticipate any problems in receiving.  He added there were other steps and phases to go through which is being done.  Mr. Lehtinen added there was one area which was also being included which had not been in the agreement before.  The land was known as the Tommie Tiger, Sr. Parcel and was 3.5 acres.  He anticipated 15 months to two years for the monies in escrow to be gaining interest.  The interest from this money will be received by the tribe when construction of the ramps begins.

Colley Billie asked if the area known as No Man's Land which included the Sonny Billie campground was included.

Mr. Lehtinen stated this was not included, just Tommie Tiger, Sr.'s camp.

Chairman Cypress explained Mr. Tiger had requested Business Council to look into getting this area as part of the compensation as adjoining camp (Pete Osceola) owner was dumping debris and was spreading the area towards his camp and Mr. Tiger was afraid if there were no known boundary Mr. Osceola would continue spreading the debris and building up the land until he was on his property.  If this land is acquired the boundary would be known so Mr. Osceola would not encroach on Mr. Tiger's property.

Colley Billie asked how the proposed toll plaza expansion on AAR would affect the tribe.

Chairman Cypress reiterated Mr. Lehtinen's report regarding the conceptual agreement.  He added the tribe was not aware of any proposed toll Booth expansion plans for AAR.  This was something to be reviewed by the tribe.

Colley Billie stated in the line of work he is in and the people he meets he has become aware of this proposed expansion.

Michael Frank asked what FDOT's explanation was for taking the extra fill without informing the Tribe.

7

L000340
L000340

Sgcmtg.2/2/95

Chairman Cypress explained the width of the canal dredged was correct but the depth was more than it should have been. This discrepancy was detected and investigated. He explained the contractor hired to remove the fill was the first to detect the discrepancy in the fill grade and amount removed. He had been contracted to remove a certain amount of fill and when he had to remove more and a different type of fill than informed he requested additional payment. This led to the investigation and eventual lawsuit against FDOT.

Mr. Lehtinen reported EPA had granted the petition filed by the tribe requesting Independent State Status right before Christmas. He recommended the Business Council adopt these Water Quality Standards within the next three to six months. The tribe now has the right to set these standards for themselves. The State has no authority to set the standards for the tribe. South Florida Water Management has taken a stand where they would have to conform to the tribe's standard's.

Explanation followed.

Mr. Lehtinen stated the NPS will be upset when the tribe acquires the borough canal through the FDOT settlement. The tribe can then have the right to say they do not want filthy water to flow into this area and NPS would have to adhere.

Mr. Lehtinen reviewed the future strategic land use for MIBG.

Meeting adjourned for lunch at 12:37 p.m.
Meeting resumed at 1:00 p.m.

He added the previous ruling of Business Council members not allowed to play has been lifted as there is no longer an outside contractor, unless directed differently all members are allowed to play. He added neon lighting has been installed on the outside of the building at MIBG and is operational.

Colley Billie asked if EPA had done a Land and Air Quality test.

Mr. Lehtinen stated the Air Quality was not addressed and only the Clean Water Act.

Colley Billie asked if a contract was executed for a study at MIBG.

Mr. Lehtinen stated Plave, Freeman and Goldberg, Inc. were retained to review management functions and make recommendations. The audit done by Arthur Andersen was good. There were no items that needed to be addressed. He added he was not associated with this firm. It was a different firm.

8

L000341
L000341

Sgcmtg. 2/2/95

He added in 1988 General Council had approved the acquisition of 25 acres for MIBG. Six months ago General Council again approved the purchase of 22 acres. This has been done and will be placed into trust for the tribe. This land could be developed as a parking lot in the future.

Mr. Lehtinen reported Mr. Goldberg had testified to TPL's lack of professional management before and has said they would be able to testify to the same for the tribe if needed.

With no further questions from General Council the meeting proceeded.

<u>Item #7.  Finance</u>

Mr. Mike Hernandez, Finance Director, presented Enterprise Financial Statements to General Council which he also reviewed. Report, questions and comments are as follows.

Mr. Hernandez stated pages 2 and 3 showed how the profits from MIBG was distributed. These monies have gone towards Health, Housing and Reserve Account. He added on the bottom of page 1 where it states total capital outlay total $998,743.10, these monies have been used for maintenance expenses and purchase of additional Video Pull Tab machines plus other expenses.

**Miccosukee Service Plaza**

|  | Month to Date | Year to Date |
|---|---|---|
| Income from Sales | $625,599.48 | $3,351,695.19 |
| Cost of Sales | $459,647.91 | $2,556,458.29 |
| Gross Profit | $165,951.57 | $759,236.90 |
| Operating Expenses | $176,084.90 | $788,743.05 |
| Operating Income (Loss) | ($10,133.33) | $6,493.85 |

**Miccosukee Tobacco Shop**

The Tobacco Shop opened on November 8, 1992 and started with an initial deposit of $78,220.00. With the profits made and deposited in Money Markets and C.D.'s the amount in the accounts total $372,651.13 including the interest accumulated.

**Arts Festival**

9

MICC 01500

L000342
L000342

Sgcmtg.2/2/95

|  | Current Actual | Year to Date Actual |
|---|---|---|
| Revenues | $18,213.20 | $81,971.25 |
| Total Revenues | $19,064.65 | $111,420.51 |
| Operational Expenses | $6,233.36 | $103,053.95 |
| Net Income or (Loss) | $12,831.29 | $8,366.56 |

Mr. Hernandez stated this fund is for educational purposes use.

**Enterprises Checkbook Balances**

| Restaurant | <$131,199.03> |
|---|---|
| Service Station | <$ 1,028.81> |
| Airboats | <$ 15,571.34> |
| Gift Shop | $ 5,061.03 |
| Village & C.C. | <$ 68,237.65> |
| General Store | $ 5,661.56 |

**Enterprises Income and Expense**

| Restaurant | : | <$ 61,684.84> | loss for the year |
|---|---|---|---|
| Tribal Assistance | : | <$ 44,073.71> |  |
| Total Income/Loss | : | <$ 17,611.13> | loss for the year |
| | | | |
| Service Station | : | $ 3,552.84 | profit for the year |
| Tribal Assistance | : | $ 16,147.79 | was used for payroll |
| Total Income/Loss | : | $ 19,700.63 | profit for the year |
| | | | |
| Airboats | : | <$ 5,915.70> | loss for the year |
| Tribal Assistance | : | $ 20,651.91 | was used for payroll |
| Total Income/Loss | : | $ 14,736.21 | profit for the year |
| | | | |
| Gift Shop | : | $ 18,277.06 | profit for the year |
| Tribal Assistance | : | 00.00 | ass't was not required |
| Total Income/Loss | : | $ 18,277.06 | profit for the year |
| | | | |
| Village | : | <$ 60,830.60> | loss for the year |
| Tribal Assistance | : | $ 45,460.24 |  |
| Total Income/Loss | : | <$ 15,370.36> | loss for the year |
| | | | |
| General Store | : | <$ 5,426.99> | loss for the year |
| Tribal Assistance | : | 00.00 | ass't was not required |
| Total Income/Loss | : | <$ 5,426.99> | loss for the year |

Mr. Hernandez asked if there were any questions regarding the Enterprises.

With no questions, report was continued.

10

L000343
L000343

Sgcmtg.2/2/95

### General Account Income & Expenses Statement

|  | Current Actual | Year to Date Actual |
|---|---|---|
| Income | $2,802,565.24 | $2,853,741.53 |
| Salaries & Benefits | $ 29,073.74 | $ 53,925.36 |
| Genrl Opert. Expens. | $ 125,981.55 | $ 191,014.15 |
| Tribal & Comm. Acts | $ 46,245.00 | $ 58,152.87 |
| Total Other Expenses | $ 126,286.81 | $ 386,619.51 |
| Headstart Support | $ 16,438.22 | $ 16,992.23 |
| Tribal Court Support | $ 1,577.68 | $ 2,521.73 |
| With all other expenses totaled. | $ 345,703.00 | $ 709,325.85 |
| Net income/loss | $2,456,862.24 | $2,144,415.68 |

Mr. Hernandez stated the statement was for the two months ended November 30, 1994.  He added the majority of the money invested in C.D.'s, Money Market and Government Bonds generate interest everyday.

Minnie Bert questioned Business Council on what solutions they are implementing to turn the Enterprise business around.

Treasurer Billie stated Business Council was following the directions set by General Council.

Ms. Bert stated Business Council should take an interest in the Enterprises and try to solve the problems so they start to generate monies.

Chairman Cypress stated this issue is always addressed at every General Council meeting, there is a budget set aside which is used to promote the Enterprises.  He added some of the Enterprises are losing money but General Account helps by providing assistance.  He added Business Council can not close any of the businesses as Tribal members are employed there and they support their families. He reiterated this is always being addressed at the meetings and the answer will always be the same.

Ms. Bert stated the Service Station is always closed and questioned if it will continue this way.

Chairman Cypress stated Business Council has recommended Assistant Chairman Nelson terminate the employee for lack of attendance.  He added Assistant Chairman Nelson has been reluctant to do this as the employee is a tribal member and the job is his livelihood.

Ms. Bert stated the Restaurant is the same way, it is staffed by non-Indians.  She added if Business Council says this is the way it will continue, it will.

11

L000344
L000344

Sgcmtg.2/2/95

Discussion followed.

Ms. Bert stated the Enterprises need tourists in order to generate monies.   They all need to be upgraded and maintained in order to attract tourism and to generate these monies.

Chairman Cypress stated each Enterprise needs at least $200,000 per year to bring it up to standard to compete with the other businesses.   He added other Tourist busses have offered to bring their customers but were asking payment of $11.00 per person.

Ms. Bert stated a proposed budget needs to be submitted by Business Council for the Enterprises and then keep General Council apprised of any progress.

Chairman Cypress stated this will be done.   He added there seems to be two different groups who attend the General Council meetings. There is one group who attends and ask questions of the Enterprises and then at the other meetings the other group will attend and ask the same questions.   He urged all tribal members to attend so they will be informed and conflicts will not arise.

Ms. Bert stated MIBG monies will not always be coming into the tribe so Business Council needs to improve the Enterprises as they could be the tribe's only means of livelihood in the future.

Chairman Cypress stated a new Tribal Court will be built.   He added a new building will be constructed so the Health Department can be centralized in one location.   He stated an Architect is now working on the blueprints.

Chairman Cypress stated Business Council is reviewing whether the Airboats should lower the fee from $7.00 per person to $6.00 per person.   This is being considered as to attract customers and be more competitive.

Chairman Cypress stated repairs are needed at the General Store and as soon as these are taken care of, the store will be leased out again.

Discussion of the Enterprises continued.

Item #8. Gaming Trips

Assistant Chairman Nelson reported the Councilmen and members of the Gaming Board were guests of Phillip Martin, Chief of the Mississippi Band of Choctaws.   He had extended an invitation for them to observe the Silver Star Casino.   On the day they arrived they were taken for a walk through of the gaming hall to observe

12

L000345
L000345

Sgcmtg.2/2/95

operations. He added the next day they were taken to observe the
other businesses they had and the operations of these.

Jennie O. Billie, Gaming Board Member, reported three restaurants
were located in the gaming hall and the employees made customer
service their top priority. She added the entertainment seemed to
be the main focus of the establishment. The tribe is located in a
small town so all the entertainment is mainly centralized in this
one location. She stated the employees of the gaming hall are
allowed to play at the gaming establishment.

Jackson Tiger, Interim Committee member, stated it took the tribe
six months from the time of planning to the opening of the gaming
hall. The tribe worked 24 hours a day to get the project started
and was able to finish so soon.

Michael Frank, Gaming Board member, reiterated earlier comments
made by Jennie O. Billie and Jackson Tiger. He added the tribe
also had a hospital, elderly center, school and a factory located
on the reservation. He added the trip was very informative.

Chairman Cypress stated Chief Martin and two guests had visited
MIBG and extended an invitation to Business Council and guests to
their gaming hall. They also provided transportation for the trip.
He added Councilmen and Gaming Board members also visited Foxwoods
Casino in Connecticut. He added it is owned and operated by the
Mashentucket/Pequot tribe. He stated this tribe is saying they are
willing to pay the taxes being imposed on gaming revenue. Their
tribal members would have no problem as the tribe is small and
profits are high. He added the Mississippi Band of Choctaws run
their tribe similar to the Miccosukee tribe. They have the same
beliefs and have always been friendly to the Miccosukee tribe.

Item #9. Meetings

Chairman Cypress reported he had met with the Assistant Secretary
of Interior to discuss the tribe's request for the 25 housing pad
permits for the Loop Road. He informed the Secretary the tribe had
not received any response to their request so therefore the lawsuit
was filed. He stated a response had been received after the
lawsuit was filed. He added talks will continue regarding this
issue and Business Council will keep General Council informed.

Chairman Cypress stated National Park Service is contending the
tribe is not taking care of the Permit Area. They are citing the
debris around the homes and the roadside. He urged General Council
to take more care of the homesite surroundings and to dispose of
the debris properly.

13

MICC 01594

L000346
L000346

Sgcmtg.2/2/95

Chairman Cypress informed General Council that Bill Ott, former BIA Director, had retired after 30 years and Business Council had offered him the position of solicitor for the tribe and to be stationed in Washington.  He will inform them after reaching a decision.

Chairman Cypress reported Business Council will be conducting a Health Retreat with the Health Department.  He added progress has been made in some areas since the first Health Retreat.  He added there are some items which have to go through Health Board but the department at times try to by pass them and bring directly to Business Council.  He added after this meeting the next one will be held in July.

Chairman Cypress reported so far Business Council training has been held twice and another will be held in Key Largo from February 13 - 16, 1995.  The bi-lingual teacher aides will be attending this meeting to utilize teachings in the school program.  He added culture talks for the youth will be resumed.

Chairman Cypress reported the Councilmen will be attending the USET meeting in Washington.  He added there are at least six issues that the tribe would like to address during the meeting.  The taxation on the gaming revenues and Gaming laws will be the priority.

Chairman Cypress stated at some of the meetings, when Dexter Lehtinen, Tribal Attorney, speaks on issues on the tribe's behalf they say he is stating his own opinions.  This is not so, he addresses issues the tribe wants him to address and it is the tribe's feelings and comments he is stating.

Chairman Cypress stated the Bingo Board will be appointing the officers next week.

Item #10.  Housing

Chairman Cypress reported Annie Jim's house will be demolished and replaced.  This will leave the gray building, which is used as a rental home, as the only original wooden buildings constructed.  He added if General Council wishes Business Council can move the home to be demolished to another location for preservation.

Bobby Billie stated the gray building was built in 1963.

Chairman Cypress stated more homes will be built as soon as the permits are approved.  There are plans to also construct more houses on AAR.  He urged the homeowners of the completed houses on AAR to move in as soon as possible as the houses could be vandalized.

14

L000347
L000347

Sgcmtg.2/2/95

Chairman Cypress added non-indians are still being brought back to the houses by tribal members. This issue has already been addressed and General Council has already stated the regulations/ordinances are to be imposed. He added one of the homeowners has been advised by Business Council the tribe could reclaim the house if they continue doing this.

. He added Agnes M. Cypress has informed Administration Office she is considering relinquishing her home and will reapply for housing in the future.

Alice J. Osceola stated when the homes are being constructed, it should be built in accordance with the Dade County building codes. When houses are finished they should be thoroughly inspected by Business Council before being occupied. There are too many complaints of the houses being improperly constructed. She added the homeowners could also be at fault.

Chairman Cypress stated the homes are inspected before being occupied and as stated at times the homeowners do the damage and are at fault.

Chairman Cypress stated the water tank being constructed will have a larger capacity. He added it has not been tested and when it is done it could affect the lines in the homes, fire hydrants and the main water line. He urged General Council to inform proper departments if they notice any water leaks in the community. He added a water line is to be placed to service the tribal homes on Loop Road but NPS is trying to block this work also.

Alice J. Osceola stated driveways should also be constructed with the homes. There are some which do not have it and the homeowners have to share and is inconvenient. She added Evelyn Eleanor Osceola and Billie's houses do not have driveways and should be constructed for them when other homes are being built.

Ms. Osceola asked when the water line installation will begin. She was informed the date is not known as approval has not been received.

## Item #11. Membership/Relinquishment Applications

Chairman Cypress stated Secretary Bert would handle this part of the meeting.

Secretary Bert asked if there were any applications for tribal enrollment. He was informed there were seven. Applications were as follows;

15

L000348
L000348

Sgcmtg.2/2/95

01. William McKinley Osceola, Otter clan; parents are John McKinley Osceola (Bird clan, non-tribal member) and Peggy Osceola (Otter clan, non-tribal member). Represented by Betty H. Osceola, cousin.

02. Rita Jean Attaway, Otter clan; parents are Michael Attaway (non-Indian) and Louise O. Bert (Otter clan, tribal member). Represented by Betty H. Osceola, maternal aunt.

03. Gregory Victor McKinley Osceola, Otter clan; parents are Reuben H. Osceola (Panther clan, Seminole tribal member) and Ruth M. B. Osceola (Otter clan, tribal member). Represented by Betty H. Osceola, maternal aunt.

04. William Jim III, no clan; parents are William Jim, Jr. (Otter clan, tribal member) and Angela K. Cobb (non-Indian). Represented by William Jim, Sr., paternal grandfather.

05. Marilyn Jenice Huggins, Bigtown clan; parents are Norman J. Huggins (Bird clan, Seminole tribal member) and Kathy B. Huggins (Bigtown clan, tribal member). Represented by Kathy B. Huggins, mother.

06. Randall Elliott Huggins, Bigtown; parents are Norman J. Huggins (Bird clan, Seminole tribal member) and Kathy B. Huggins (Bigtown clan, tribal member). Represented by Kathy B. Huggins, mother.

07. Kelvin James McKinley Huggins, Bigtown; parents are Norman J. Huggins (Bird clan, Seminole tribal member) and Kathy B. Huggins (Bigtown clan, tribal member). Represented by Kathy B. Huggins, mother.

08. Ariella Tigertail-Gomez, Panther clan; parents are Richard Gomez (non-Indian) and Mary Susan Tigertail (Panther clan, tribal member). Represented by Diane T. Cypress, maternal aunt.

Evelyn S. Osceola stated at the last General Council meeting it had been stated the applications would be addressed one at a time.

Tommie Tiger, Sr. questioned if any of the Huggins children, who had been Seminole tribal members, had received the Land Settlement monies.

16

L000349
L000349

Sgcmtg.2/2/95

Mrs. Huggins stated they have not received nor will they receive the monies. She added Seminole tribe had informed them they will be revoking their share of the monies.

Discussion followed.

Marla Sanders stated she had talked with Priscilla Sayen of the Seminole tribe and she had stated they are still entitled to the money and can receive when they turn 18 years old and if they want it.

Mrs. Huggins stated this is not what they told her.

Discussion followed.

Andy Buster reviewed the Land Settlement monies situation. He stated even though Miccosukee Tribe did not receive these monies, it would be the same as if we did as the monies are set aside for the tribe.

Tommie Tiger, Sr. responded to Mr. Buster's comments. He stated the General Council agreed along time ago not to receive the land settlement monies. He added no member of the Miccosukee Tribe should say "Miccosukee Tribe has already received the monies", even if it is said to make a point.

Discussion followed.

Tommie Tiger, Sr. stated Mrs. Huggins should submit an affidavit stating her children are relinquishing all claims to the settlement monies.

After lengthy discussion, Secretary Bert requested action from General Council.

Betty H. Osceola motioned to accept all eight applications for tribal enrollment; seconded by Jackson Tiger. Motion carried with a vote of 34 for, 01 against and 03 abstentions.

Jackson Tiger stated Business Council is to follow up on the three new tribal members. The issue of the land settlement monies should be clarified.

Relinquishments.

Chairman Cypress asked if there were any relinquishment applications. He was informed there were none.

17

L000350
L000350

Sgcmtg.2/2/95

## Item #12. Marriage Recognition/Dissolution of Marriage

Chairman Cypress asked if there were any applications for recognition or dissolution of marriage. He was informed there were none.

## Item #13. Guardianship Applications

Chairman Cypress asked if there were any applications for Guardianship. He was informed there were none.

## Item #14. Councilmen Reports

Chairman Cypress stated he had made his report earlier in the meeting and requested Councilmen to make their reports.
Treasurer Billie reported he has attended the meetings and trips reviewed earlier. He added the lights at MIBG keep failing and he has informed the management and was assured it would be taken care of. He has also been assisting Assistant Chairman Nelson and Lawmaker Cypress regarding Housing.

Secretary Bert reported he has also attended the trips to Mississippi and Connecticut. He reiterated earlier report made by Jennie O. Billie, Jackson Tiger and Michael Frank. He reviewed the status of the tribal trailer rentals. He stated the monthly rent payment will be raised to $150.00 which would include lawn maintenance.

Lawmaker Cypress reviewed the two trips previously reported on. He added the Mashentucket/Pequot Tribe's Casino averages $2 million per day in profits. He stated Mississippi Band of Choctaws gaming hall is on a smaller scale but they do have a 100 room hotel located on the premises. He had recommended to Business Council they should consider the possibility of the tribe constructing a hotel on tribal lands. He added Jerry Hart, Contractor, has informed him the repairs needed at some of the homes have been completed. He stated follow up will be done on these repairs with the list that was submitted.

Assistant Chairman Nelson reported the Arts Festival attendance was down this year. He added the profit made was roughly $8000. He added the Festival Committee is already planning the Music Festival to be held in July. He added as per General Council directive, the vendor booth fees were kept the same for tribal members.

## Item #15. General Discussion

Chairman Cypress stated any items for discussion General Council wanted to present may be done at this time.

18

L000351
L000351

Sgcmtg.2/2/95

Connie Jim, Elderly Care Services Worker, stated she had heard gossip about her job performance. She had heard the problems were she was not doing her job duties, lack of attendance and leaving work early. She stated she has arthritis and does not do that much work on some days and does at times leave work early due to this. She added she would leave it to Business Council to decide if she is to remain in her position or not.

Treasurer Billie stated she should talk to her supervisor in the Administration office. This person would be the one to talk to her about her job performance and not judge her performance by gossip.

Agnes Cypress stated a new building for the Health Department will not change anything. She added in order to solve the problems the whole staff has to be changed. She stated the staff are not responsible enough and are not educated enough in the health field. She stated the health department states shortage of staff when this lack of education is brought to their attention. They state the few staff they have can not be sent to training workshops because they are needed on the premises. Also, they do not have the right medications nor do they have the medication on the premises. She stated she has worked for the health department before and was sent to training. She knows what her health problems are and what she needs to take care of it. When she tells the nurses or staff, they give or other medication or tell her there is nothing wrong with her.

Jackson Tiger stated he is her brother and he knows what is wrong with Mrs. Cypress. He added the health department staff who are present at the meeting should not take her complaints seriously. He stated he has informed her she has brought her health problems upon herself. She has done things in the past which were culturally wrong and these are the cause.

Wayne Billie stated he has talked with some tribal members and have been informed of illegal drug selling on the reservation. He recommended to have culture talks more often for the youth. He added the Trust Fund payments being distributed is contributing to the problem. The youth are receiving too much money and the parents do not have any control over how they spend it.

Jackson Tiger stated he is having problems with the drug problem within his residence. He stated the two youth residing there are taking his possessions and selling them to buy drugs.

Mr. Tiger gave a short cultural teaching on drug use.

Howard Osceola addressed Assistant Chairman Nelson regarding intoxicated individuals loitering at the Service Station. He has

19

L000352
L000352

Sgcmtg.2/2/95

observed them with open alcoholic beverages.  He added when this happens, he or the attendant is to tell them to leave but are not doing this.

Assistant Chairman Nelson stated they are told to leave but do not listen.  He has spoken with MPD about this and has requested they patrol the area more often.

Discussion followed.

Chairman Cypress stated this has been addressed and will be followed up with MPD.  He added the community is parking illegally around the tribal complex and MPD has been informed they are to enforce the "No Parking" ordinance and issue warnings and tickets. He urged General Council to observe the law.

With no further items for discussion, Chairman Cypress requested motion to adjourn the meeting.

Betty H. Osceola motioned to adjourn the Meeting; seconded by Alice J. Osceola.  Motion carried with a vote of 24 for, 00 against and 00 abstention.

The meeting officially adjourned at 3:45 p.m.


_____          _____
        DATE                     Andrew Bert, Sr., Secretary
                                Miccosukee Tribe of Indians of Florida


_____          _____
        DATE                     Billy Cypress, Chairman
                                Miccosukee Tribe of Indians of Florida


20

MICC 01511

L000353
L000353

# Exhibit 2

# GROSS RECEIPTS TAX ORDINANCE

## Section 1.   Establishment.

Is hereby declared to be the intent of the Miccosukee Tribe of Indians of Florida that the tribal business operation known as Miccosukee Indian Bingo & Gaming ("MIBG"), located within the boundaries of the Krome Avenue Reservation shall be subject to a gross receipts tax. The gross receipts tax shall be six and one-half percent (6.5%) of all gross receipts of MIBG as herein defined.

## Section 2.   Definitions.

A used herein, the term "gross receipts" shall include all amounts wagered and received by MIBG, all admission fees paid to MIBG, and all other monies received by MIBG from ancillary or supporting operations (including, but not limited to, food and beverage services, gift shop sales, and related commercial activities).

## Section 3.   Assessment and Collection.

On the last day of each calendar month, MIBG shall calculate an estimate of the gross receipts for that month. MIBG shall calculate and immediately thereafter pay to the Miccosukee Tribe of Indians of Florida an amount not less than ninety percent (90%) of the tax on these gross receipts for that month based upon that estimate (the "estimated gross receipts tax"). Within fifteen (15) days after the end of each such month, MIBG shall calculate the actual gross receipts for that month as well as the actual gross receipts tax due thereon. If the amount of actual gross receipts tax exceeds the estimated gross receipts tax previously paid for that month, Miccosukee Indian Bingo & Gaming shall immediately pay the difference to Miccosukee Tribe of Indians of Florida. If the amount of actual gross receipts tax does not exceed the estimated gross receipts tax already paid, Miccosukee Indian Bingo & Gaming shall receive a credit for the overpayment which may be applied to any tax to become due thereafter.

## Section 4.   Effective Date.

This tax shall be imposed retroactively to, and considered effective as of January 1, 1995 regardless of the actual date of approval by the General Council.

MICC 01100

# Exhibit 3



# Miccosukee Tribe of Indians
### Finance Office

**To:**    Mike Hernandez

**From:**  Billy Cypress *BC*

**Date:**  January 24, 1995

**Re:**    Taxation of Trust Fund Distributions

---

In response to your concern regarding the necessity to report the distributions to tribal members on their 1994 tax returns. I have consulted with our tribal attorney and have been assured that this income does not need to be reported on the individuals tax return. As the Finance Director I expect you, and your staff, to prepare tax returns for the members of the Tribe in accordance with, and relying on, our attorney's opinion.

As always, thank you for your assistance.



EXHIBIT
5

L000394
L000394



# *Miccosukee Tribe of Indians*
## *Administration Office*

**To:**     Mike Hernandez

**Date:**   2/27/95

**Re:**     N.T.D.R. Account

**From:**   Billy Cypress

---

At the direction of our legal council, I want you to open a checking account at Republic National Bank. In this new account I want you to deposit the "Tribal Tax" collected at the Miccosukee Bingo. The funds in this account will be evenly distributed to our members periodically.

Regarding you specific concerns regarding the I.R.S. recent ruling concerning withholding requirements on gaming profits. Our attorney has advised that this money should not be considered gaming profit and therefore is not taxable.



EXHIBIT
26

L000395
L000395

# Exhibit 4

| | |
|---|---|
| **Taxpayer Name:** Miccosukee Tribe of Indians of FL | **Examiner:** James M. Furnas |
| **TIN:** ____6784 | **Date:** 8/1/2006 |
| **Tax Form:** Information Return Reporting | |
| **Tax Year:** Calendar Year 2000, 2001, 2002, 2003, 2004 & 2005 | |

## MEETING & INTERVIEW NOTES-NTDR ACCOUNT

Meeting at the Plantation FL IRS office 8-1-2006 2:00 PM (Prepared immediately following the meeting using handwritten notes)

Present: J. Furnas IRS
　　　　J. R. Johnson IRS

　　　　Dexter Lehtinen, Esq. (Tax Info Auth.)
　　　　Guy Lewis, Esq. (Tax Info Auth.)
　　　　Jose Marrero, Enrolled Agent (Tax Info Auth.)

Lehtinen began by stating that the purpose of the meeting was to provide info RE: the Miccosukee NTDR account-they are anxious to pursue the legal issues of 1) whether the funds distributed from the "Gross Licensing Taxes" are taxable and 2) if taxable, whether they are subject to withholding. They are authorized to provide info only RE the NTDR account.

(*Italics indicate prepared questions,* ***bold italics indicate responses,*** other text indicates other items discussed)

　　1. *Were tax identification numbers (SSNs) obtained prior to disbursement of payments from the NTDR account?*
　　***Per Marrero-he does not know, but does not think so-any payments to service providers, attorneys, medical payments, etc. from the NTDR account were paid on behalf of tribal members and deducted from the tribal member's distributions, therefore he contends no Form 1099 would be required for payments to 3rd parties. Since the Tribe contends the distributions are non-taxable and not subject to Form 1099 reporting there would be no reaon to obtain SSN's.***
　　***Per Lehtinen-Unless the tribe had the SSNs because the member was also an employee, they would not have SSN's for tribal members, they do not collect them as part of the enrollment process or any other process.***

　　2. *How were the distributions determined? Were there written resolutions, ordinances, etc?*

Workpaper #:  125-

| | |
|---|---|
| Taxpayer Name: Miccosukee Tribe of Indians of FL | Examiner: James M. Furnas |
| TIN: ▓▓▓▓ 6784 | Date: 8/1/2006 |
| Tax Form: Information Return Reporting | |
| Tax Year: Calendar Year 2000, 2001, 2002, 2003, 2004 & 2005 | |

MEETING & INTERVIEW NOTES-NTDR ACCOUNT

*Per Lehtinen-the business council (consisting of the 5 tribal council members) declares the distributions quarterly depending on the funds available in the NTDR account. He does not believe there are any written records such as minutes of meetings, ordinances, etc., the accounting records of the distributions are probably all there is.*

3. *Were any of payments from the NTDR account based on individually demonstrated financial, educational, medical or other needs? How did individual members apply for these payments and how were the needs documented?*
*Per Marrero and Lehtinen- none of the payments were need based-they were equal to each tribal member-they don't look equal for a couple of reasons-*
*1) The payments are made to heads of household for every tribal member- for example, in the sample quarter 200503 each member received $27,500. If the payment was made to a head of a household with 3 members, the payment would be 3X27,500=82,500 etc.*
*2) Various disbursements would be made throughout the period prior to the distribution-*
- *the most common would be loans from the NTDR account.*
- *Other disbursements might include attorney fees, various bills, transfers directed by the tribal members to brokerage or other accounts, etc.*
- *Any of the payments would be solely at the discretion and direction of the Tribal member entitled to the payments.*
- *These payments would then be deducted from the distribution to the head of household.*
- *Most of these payments would be from the NTDR account-some might from the General or other accounts, but the other account would then be reimbursed from the NTDR account*
- *All would be accounted for through the A/P and A/R system.*

4. *When did the gross receipts tax on tribal enterprises begin? Prior to gaming, what enterprises did the tax apply to? How were the proceeds of the tax used and distributed?*
*Per Lehtinen-Began in 1984, applied to any businesses of the Tribe or operating on the reservation- prior to gaming (and still) it applied to grazing fees, hunting camps, rentals of land (currently cell phone towers, unsure when this would have started) etc. Amounts were minimal prior to gaming, but handled the same-Council would declare distributions periodically. Currently (And historically) all the tax is collected from wholly owned and operated tribal enterprises. While it would apply to businesses of others operated on tribal lands, there are none, in part due to the limited size of the reservation.*

Workpaper #:   125-

| Taxpayer Name: Miccosukee Tribe of Indians of FL | Examiner: James M. Furnas |
|---|---|
| TIN: ▮▮▮▮6784 | Date: 8/1/2006 |
| Tax Form: Information Return Reporting | |
| Tax Year: Calendar Year 2000, 2001, 2002, 2003, 2004 & 2005 | |

### MEETING & INTERVIEW NOTES-NTDR ACCOUNT

5.  *With regards to loans from the account-*

- *Are there written rules, etc. for the loan program?*

**Per Lehtinen-there are rules for the loans, maybe not written or specific ordinances, meeting minutes, etc. The samples applications provided show they must be applied for and approved (probably the business council has the say)**

- *Who may receive loans from the account? Tribal members only? Employees? Others?*

**Tribal members only**

- *What are the limits for the loan amounts?*

**Currently limited to $11,000**

- *What is the process for obtaining the loans?*

**Member submits an application (samples were provided)**

- *Who approves the loans?*

**Business council (**Samples reviewed were all approved by Max Billie, the Treasurer)

- *Are the loans secured?*

**The loans are secured by the distributions-they are always deducted from the next NTDR distribution**

- *Is interest charged?*

**Interest is charged-(**samples reviewed indicated a flat 10% is charged, regardless of the period the loan is outstanding) **Lehtinen indicated they charge a high rate to discourage the loans-it's a large bookkeeping burden)**

- *Are there set repayment schedules?*

**Per Marrero-they are always deducted out of the next NTDR quarterly distribution and are not carried over and are not given out in excess of what the next distribution is likely to be.**

- *Are outstanding loan amounts collected from the estate of deceased individuals?*

**Unknown-they would probably go ahead and give a distribution to collect it**

- *Were any loans made from other accounts or sources and then repaid from the NTDR account?*

**Some were. Marerro and Lehtinen would confer privately to decide whether they could divulge that info since it went beyond the NTDR account.(** I pointed out that the sample info they were providing listed loans and expenses from the general account, and they conceded that the answer was yes.

6.  *Were advice/opinions concerning the distributions sought from legal, tax, or financial professionals?*

**Workpaper #:  125-**

| Taxpayer Name: Miccosukee Tribe of Indians of FL | Examiner: James M. Furnas |
|---|---|
| TIN: ███6784 | Date: 8/1/2006 |
| Tax Form: Information Return Reporting Tax Year: Calendar Year 2000, 2001, 2002, 2003, 2004 & 2005 | |

## MEETING & INTERVIEW NOTES-NTDR ACCOUNT

No answers to questions 6 & 7 were provided

7. *Were any communications made to tribal members concerning the nature or taxability of the distributions?* No answer.

8. *Were payments made from the account to third parties on behalf of individual tribal members?* **Yes** *Were W-9's obtained from service providers prior to payment?* **No.** *Was any attempt made to determine Form 1099 requirements?* **No**

Documents provided by Marrero-
ALL DOCUMENTS PROVIDED WERE EXAMPLES FOR THE FIRST QUARTER OF 2005 UNLESS OTHERWISE INDICATED.

1. SUMMARY for the first quarter of 2005 distribution showing-
   - *Gross distributions to members*
   - *Deductions, amounts detailed by attorney fees, emergency loan, G/A loan, Housing fill, housing, NTDR direct loan, Trust account.*
   - *Attorney fees by members*
   - *Selected distributions by member (Marrero selected 5 members at random and analyzed their gross deduction and all deductions. He included all back-up for the deductions for those 5 members including P.O.s for payments to third parties, loans, wire transfers at the members discretion, etc.)*
2. *CHECK REGISTER REPORT(FOR 1ST qtr 2005) showing the gross distributions, the deductions, and the* <u>net</u> *checks to each head of household. This register showed only the 2XXXXX series checks from the NTDR account. The 5XXXXX series would be interim loans, expenses, etc. which would then be deducted from the net distribution.*
3. *a DEDUCTION REPORT (FOR 1ST qtr 2005) detailing the deductions for each head of household including attorney fees, emerg. Loan-GA, G/A Loan, housconst-fill, housing, ntdr loan, trust account.*

"Trust" account was discussed, Marrero was unsure if there were any restrictions on funds going in to this account, both Lehtinen and Marrero believed that any deductions, amounts sent to investment accounts were at the discretion of the members, and did not think there were any provisions for minors or any deferral arrangements.

Documents to be provided were discussed- Documents listed at 1, 2 and 3 above will be provided (with the exception of the 5 members randomly selected detail) will be provided for each quarter for 2000 to 2005. They will also provide a check register and/or a-p a-r listing showing all disbursements from the NTDR account, not just the net distribution disbursements as in 2 above. The document request provided to Lehtinen in early July

**Workpaper #: 125-**

| Taxpayer Name: Miccosukee Tribe of Indians of FL | Examiner: James M. Furnas |
|---|---|
| TIN: ███ 6784 | Date: 8/1/2006 |
| Tax Form: Information Return Reporting | |
| Tax Year: Calendar Year 2000, 2001, 2002, 2003, 2004 & 2005 | |

## MEETING & INTERVIEW NOTES-NTDR ACCOUNT

was inclusive enough and Marrero was clear enough on the needed info that we mutually agreed another IDR was not necessary.

We discussed resolving the legal issues of the taxability of the distributions and the withholding. I told them once again that while we are pretty sure the IRS will take the position that the distributions are taxable and subject to withholding, I have to think about protecting the government's interest, and that if there is a possibility they are not subject to withholding, we may only be able to collect the tax on the income at the individual level. That would mean audits of individuals, and for those who did file, the 6 year statute on the 2000 years will expire in April 2007-that means time is getting short.
Guy Lewis wants us to get them "a meeting in Washington" to resolve the legal issue. I explained that I have to develop the facts and put some numbers with the legal arguments before we can begin to resolve it. I explained TAMs and PLRs, neither of which seem appropriate, and briefly discussed expedited Appeals consideration, but again I have to develop the issue first.
I told them that if they really want to expedite resolution of the issues, they need to provide information-on the general account and other issues as well as the NTDR account.

I then presented Lehtinen with 2 document requests with specific items that appear to require F1099 reporting- the Music Festival Account and the Housing Construction account. I explained that while these were not huge issues in the big scheme of things, they are items we need to resolve, and I would like to establish a pattern where I request info and then they respond with info-that's the only way we'll resolve this case in a timely and reasonable manner. I told him that we would soon be issuing similar but much larger detailed IDRs regarding the general account-he said he will see whether the Tribe is ready to start providing info on anything other than NTDR.

Marrero believes it will take at least two weeks and probably closer to thirty days for them to provide the info agreed upon at this meeting.

**Workpaper #:  125-**

# Exhibit 5

Form **1040**

Department of the Treasury- Internal Revenue Service

**U.S. Individual Income Tax Return   2001**   (99)   IRS Use Only- Do not write or staple in this space.

For the year Jan. 1-Dec. 31, 2001, or other tax year beginning _____ , 2001, ending _____ , 20 ___   OMB No. 1545-0074

**Label**
(See instructions on page 19.)

**Use the IRS label.** Otherwise, please print or type.

| L A B E L   H E R E | |
|---|---|
| Your first name and initial **Sally** | Last name **Jim** |
| If a jt. rtn., sp. first name & initial | Last name |

Your social security number  ▢▢▢ -2393

Spouse's social security number

Home address (number and street). If you have a P.O. box, see page 19.   **HC 61 Box E-4300**   Apt. no.

City, town or post office, state, and ZIP code. If you have a foreign address, see page 19.   **Ochopee    FL 34141**

▲ **Important!** ▲
You must enter your SSN(s) above.

**Presidential Election Campaign** (See page 19.)

▶ Note. Checking "Yes" will not change your tax or reduce your refund.
Do you, or your spouse if filing a joint return, want $3 to go to this fund? ▶

You:  ☐ Yes  ☐ No      Spouse:  ☐ Yes  ☐ No

**Filing Status**

Check only one box.

1 ☐ Single
2 ☐ Married filing joint return (even if only one had income)
3 ☐ Married filing separate return. Enter spouse's social security no. above and full name here. ▶
4 ☒ Head of household (with qualifying person). (See page 19.) If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5 ☐ Qualifying widow(er) with dependent child (year spouse died ▶ ____ ). (See page 19.)

**Exemptions**

6a ☒ Yourself. If your parent (or someone else) can claim you as a dependent on his or her tax return, **do not** check box 6a
b ☐ Spouse

c Dependents:

| (1) First name   Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) Ck. if qual. child for child tax credit (see pg. 20) |
|---|---|---|---|
| T   M. J | ▢▢▢ -0863 | Daughter | ☒ |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

If more than six dependents, see page 20.

No. of boxes checked on 6a and 6b  **1**
No. of your children on 6c who:
● lived with you  **1**
● did not live with you due to divorce or separation (see page 20)
Dependents on 6c not entered above
Add numbers entered on lines above ▶  **2**

d Total number of exemptions claimed

**Income**

Attach Forms W-2 and W-2G here. Also attach Form(s) 1099-R if tax was withheld.

If you did not get a W-2, see page 21.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| | | | |
|---|---|---|---|
| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 | 7 | 25,990 |
| 8a | Taxable interest. Attach Schedule B if required | 8a | |
| b | Tax-exempt interest. **Do not** include on line 8a | 8b | |
| 9 | Ordinary dividends. Attach Schedule B if required | 9 | |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes (see page 22) | 10 | |
| 11 | Alimony received | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ | 12 | |
| 13 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ ☐ | 13 | |
| 14 | Other gains or (losses). Attach Form 4797 | 14 | |
| 15a | Total IRA distributions   15a | b Taxable amount (see page 23) 15b | |
| 16a | Total pensions and annuities   16a | b Taxable amount (see page 23) 16b | |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 17 | |
| 18 | Farm income or (loss). Attach Schedule F | 18 | |
| 19 | Unemployment compensation | 19 | |
| 20a | Social security benefits   20a | b Taxable amount (see page 25) 20b | |
| 21 | Other income. List type & amt. (see page 27) **See Statement 1** | 21 | |
| 22 | Add the amounts in the far right column for lines 7 through 21. This is your **total income** ▶ | 22 | 25,990 |

**Adjusted Gross Income**

| | | | |
|---|---|---|---|
| 23 | IRA deduction (see page 27) | 23 | |
| 24 | Student loan interest deduction (see page 28) | 24 | |
| 25 | Archer MSA deduction. Attach Form 8853 | 25 | |
| 26 | Moving expenses. Attach Form 3903 | 26 | |
| 27 | One-half of self-employment tax. Attach Schedule SE | 27 | |
| 28 | Self-employed health insurance deduction (see page 30) | 28 | |
| 29 | Self-employed SEP, SIMPLE, and qualified plans | 29 | |
| 30 | Penalty on early withdrawal of savings | 30 | |
| 31a | Alimony paid   b Recipient's SSN ▶ | 31a | |
| 32 | Add lines 23 through 31a | 32 | |
| 33 | Subtract line 32 from line 22. This is your **adjusted gross income** ▶ | 33 | 25,990 |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 72.   Form **1040** (2001)

DAA

Form 1040 (2001)  SALLYJIM 48-4878    **Sally Jim**                    -2393  Page **2**

| | | | | |
|---|---|---|---|---|
| **Tax and Credits** | 34 | Amount from line 33 (adjusted gross income) | 34 | 25,990 |
| | 35a | Check if: ☐ You were 65 or older, ☐ Blind; ☐ **Spouse** was 65 or older, ☐ Blind. | | |
| | b | Add the number of boxes checked above and enter the total here ▶ 35a | | |
| | | If you are married filing separately and your spouse itemizes deductions, or you were a dual-status alien, see page 31 and check here ▶ 35b ☐ | | |
| **Standard Deduction for—** | 36 | Itemized deductions (from Schedule A) or your standard deduction (see left margin) | 36 | 6,650 |
| • People who checked any box on line 35a or 35b or who can be claimed as a dependent, see page 31. | 37 | Subtract line 36 from line 34 | 37 | 19,340 |
| | 38 | If line 34 is $99,725 or less, multiply $2,900 by the total number of exemptions claimed on line 6d. If line 34 is over $99,725, see the worksheet on page 32 | 38 | 5,800 |
| | 39 | Taxable income. Subtract line 38 from line 37. If line 38 is more than line 37, enter -0- | 39 | 13,540 |
| • All others: Single, $4,550 | 40 | Tax (see page 33). Check if any tax is from a ☐ Form(s) 8814 b ☐ Form 4972 | 40 | 2,029 |
| Head of household, $6,650 | 41 | Alternative minimum tax (see page 34). Att. Form 6251 | 41 | |
| Married filing jointly or Qualifying widow(er), $7,600 | 42 | Add lines 40 and 41 ▶ | 42 | 2,029 |
| | 43 | Foreign tax credit. Attach Form 1116 if required | 43 | |
| Married filing separately, $3,800 | 44 | Credit for child and dependent care expenses. Attach Form 2441 | 44 | |
| | 45 | Credit for the elderly or the disabled. Attach Schedule R | 45 | |
| | 46 | Education credits. Attach Form 8863 | 46 | |
| | 47 | Rate reduction credit. See the worksheet on page 36 | 47 | 500 |
| | 48 | Child tax credit (see page 37) | 48 | 600 |
| | 49 | Adoption credit. Attach Form 8839 | 49 | |
| | 50 | Other credits from: a ☐ Form 3800  b ☐ Form 8396  c ☐ Form 8801  d ☐ Form (specify) | 50 | |
| | 51 | Add lines 43 through 50. These are your total credits | 51 | 1,100 |
| | 52 | Subtract line 51 from line 42. If line 51 is more than line 42, enter -0- ▶ | 52 | 929 |
| **Other Taxes** | 53 | Self-employment tax. Attach Schedule SE | 53 | |
| | 54 | Social security and Medicare tax on tip income not reported to employer. Attach Form 4137 | 54 | |
| | 55 | Tax on qualified plans, including IRAs, and other tax-favored accounts. Attach Form 5329 if required | 55 | |
| | 56 | Advance earned income credit payments from Form(s) W-2 | 56 | |
| | 57 | Household employment taxes. Attach Schedule H | 57 | |
| | 58 | Add lines 52 - 57. This is your total tax ▶ | 58 | 929 |
| **Payments** | 59 | Federal income tax withheld from Forms W-2 and 1099 | 59 | 1,760 |
| If you have a qualifying child, attach Schedule EIC | 60 | 2001 estimated tax payments & amount applied from 2000 return | 60 | |
| | 61a | Earned income credit (EIC)  NO | 61a | |
| | b | Nontaxable earned income | 61b | | |
| | 62 | Excess social security and RRTA tax withheld (see page 51) | 62 | |
| | 63 | Additional child tax credit. Attach Form 8812 | 63 | |
| | 64 | Amount paid with request for extension to file (see page 51) | 64 | |
| | 65 | Other payments. Check if from a ☐ Form 2439 b ☐ Form 4136 | 65 | |
| | 66 | Add lines 59, 60, 61a, & 62 - 65. These are your total pymt. ▶ | 66 | 1,760 |
| **Refund** | 67 | If line 66 is more than line 58, subtract line 58 from line 66. This is the amount you overpaid | 67 | 831 |
| Direct deposit? See page 51 and fill in 68b, 68c, and 68d. | 68a | Amount of line 67 you want refunded to you ▶ | 68a | 831 |
| | ▶ b | Routing number | | |
| | | ▶ c Type: ☐ Checking ☐ Savings | | |
| | ▶ d | Account number | | |
| | 69 | Amount of line 67 you want applied to your 2002 estimated tax ▶ 69 | | |
| **Amount You Owe** | 70 | Amount you owe. Subtract line 66 from line 58. For details on how to pay, see page 52 ▶ | 70 | |
| | 71 | Estimated tax penalty. Also include on line 70 | 71 | |

**Third Party Designee**  Do you want to allow another person to discuss this return with the IRS (see page 53)? ☐ **Yes.** Complete the following. ☐ **No**

| Designee's name ▶ | Personal identification number (PIN) ▶ | Phone no. ▶ |
|---|---|---|

**Sign Here**  Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Joint return? See page 19.

Keep a copy for your records.

| Your signature | Date | Your occupation | Daytime phone number |
|---|---|---|---|
| Spouse's signature. If a joint return, **both** must sign. | Date | Spouse's occupation | |

**Paid Preparer's Use Only**

| Preparer's signature ▶ | Date 1/20/15 | Check if self-employed ☐ | Preparer's SSN or PTIN 2623 |
|---|---|---|---|
| Firm's name (or yours if self-employed), address, and ZIP code | Rodriguez, Trueba & Company  1985 NW 88 Court, Suite 101  Miami                              FL 33172 | EIN 8713  Phone no. 305-593-2644 | |

DAA                                                                  Form **1040** (2001)

SALLYJIM 4:51 PM

| Form **8275** | | **Disclosure Statement** | | | | OMB No. 1545-0889 |
| (Rev. May 2001) | | Do not use this form to disclose items or positions that are contrary to Treasury regulations. Instead, use Form 8275-R, Regulation Disclosure Statement. See separate instructions. ▶ **Attach to your tax return.** | | | | |
| Department of the Treasury Internal Revenue Service | | | | | | Attachment Sequence No. **92** |

| Name(s) shown on return | Identifying no. shown on return |
|---|---|
| **Sally Jim** | **-2393** |

**Part I   General Information** (See instructions)

| (a) Rev. Rul., Rev. Proc., etc. | (b) Item or Group of Items | (c) Detailed Description of Items | (d) Form or Schedule | (e) Line No. | (f) Amount |
|---|---|---|---|---|---|
| 1     26 USC SEC 139E | Otherben | Benefits from Indian welfare payments | 1040 | 21 | |
| 2 | | | | | |
| 3 | | | | | |

**Part II   Detailed Explanation** (See instructions)

1  Persuant to IRC Sec 139(E), payments for the value of any Indian general welfare benefits are excluded from gross income.

2

3

**Part III   Information About Pass-Through Entity.** To be completed by partners, shareholders, beneficiaries, or residual interest holders.

Complete this part only if you are making adequate disclosure for a pass-through item.

**Note:** A pass-through entity is a partnership, S corporation, estate, trust, regulated investment company (RIC), real estate investment trust (REIT), or real estate mortgage investment conduit (REMIC).

| 1 Name, address, and ZIP code of pass-through entity | 2 Identifying number of pass-through entity |
|---|---|
| | 3 Tax year of pass-through entity                                   to |
| | 4 Internal Revenue Service Center where the pass-through entity filed its return |

For Paperwork Reduction Act Notice, see separate instructions.                         Form **8275** (Rev. 5-2001)

DAA

SALLYJIM Jim, Sally

-2393

**Federal Statements**

4:41 PM

### Statement 1 - Form 1040, Line 21 - Other Income

| Description | | Amount |
|---|---|---|
| Miccosukee Tribe of Indian | $ | 272,000 |
| Indian Welfare benefits | | |
| exclusion | | -272,000 |
| Total | $ | 0 |

SALLYJIM-48.PM

| Form **1040** | **Child Tax Credit Worksheets** | **2001** |
|---|---|---|

Name
**Sally Jim**

Taxpayer Identification Number
-2393

## Child Tax Credit Worksheet - Form 1040, Line 48 or 1040A, Line 31

| | | | |
|---|---|---|---|
| 1. | Number of qualifying children: __1__ x $600. Enter the result. | 1. | 600 |
| 2. | Enter the amount from Form 1040, line 34 or Form 1040A, line 20. | 2. | 25,990 |
| 3. | Enter the total of any exclusion of income from Puerto Rico, and amounts from Form 2555, lines 43 and 48. | 3. | |
| 4. | Add lines 2 and 3. | 4. | 25,990 |
| 5. | Enter: $110,000 if married filing jointly; $75,000 if single, head of household, or qualifying widow(er); $55,000 if married filing separately | 5. | 75,000 |
| 6. | Is the amount on line 4 more than the amount on line 5? | | |
| | ☒ **No.** Leave line 6 blank. Enter -0- on line 7. | | |
| | ☐ **Yes.** Subtract line 5 from line 4. If the result is not a multiple of $1,000, increase it to the next multiple of $1,000. } ... | 6. | |
| 7. | Multiply the amount on line 6 by 5% (.05). Enter the result. | 7. | 0 |
| 8. | Subtract line 7 from line 1. If zero or less, **stop here; you cannot** take this credit. | 8. | 600 |
| 9. | Enter the amount from Form 1040, line 42 or 1040A, line 26. | 9. | 2,029 |
| 10. | Add the amounts from Form 1040 lines 43, 44, 45, 46 and 47 or Form 1040A lines 27, 28, 29 and 30. Enter the total | 10. | 500 |
| 11. | Are you claiming any of the following credits? | | |
| | ● Adoption credit, Form 8839   ● Mortgage interest credit, Form 8396   ● District of Columbia credit, Form 8859 | | |
| | ☒ **No.** Enter the amount from line 10. | | |
| | ☐ **Yes.** Enter the amount from Child Tax Credit - Line 11 Worksheet below. } ... | 11. | 500 |
| 12. | Subtract line 11 from line 9. | 12. | 1,529 |
| 13. | **Child tax credit.** Enter the **smaller** of line 8 or line 12 here and on Form 1040, line 48 or 1040A, line 31 | 13. | 600 |

## Child Tax Credit - Line 11 Worksheet

Use this worksheet **only** if you checked "Yes" on line 11 of the Child Tax Credit Worksheet above.

| | | | |
|---|---|---|---|
| 1. | Enter the amount from line 8 of the Child Tax Credit Worksheet above. | 1. | |
| 2. | Enter the taxable earned income from the Taxable Earned Income Worksheet | 2. | |
| 3. | Is the amount on line 2 more than $10,000? | | |
| | ☐ **No.** Leave line 3 blank, enter -0- on line 4, and go to line 5. | | |
| | ☐ **Yes.** Subtract $10,000 from the amount on line 2. Enter the result. } ... | 3. | |
| 4. | Multiply the amount on line 3 by 10% (.10) and enter the result. | 4. | |
| 5. | Is the amount on line 1 of the Child Tax Worksheet above $1,800 or more? | | |
| | ☐ **No.** If line 4 above is zero, **stop.** Do not complete the rest of this worksheet. Instead, go back the Child Tax Worksheet above and do the following. Enter the amount from line 10 on line 11 and complete line 12 and 13. Otherwise, leave lines 6 through 9 blank, enter -0- on line 10, go to line 11 below | | |
| | ☐ **Yes.** If line 4 above is equal to or more than line 1 above, leave lines 6 through 9 blank, enter -0- on line 10, and go to line 11 below. Otherwise go to line 6. | | |
| 6. | Enter the total social security and Medicare taxes withheld from your pay (and your spouse's if filing a joint return). These taxes should be shown in boxes 4 and 6 of your Form(s) W-2. If you worked for a railroad, see below. | 6. | |
| 7. | Enter the total of the amounts from Form 1040, line 27 and line 54, plus any uncollected social security and Medicare or RRTA taxes shown in box 12 of your Form(s) W-2 with codes and **A, B, M N.** | 7. | |
| 8. | Add lines 6 and 7 | 8. | |
| 9. | Add the amounts from Form 1040, lines 61a and 62 or Form 1040A, line 39a and excess social security tax included on line 41. Enter the total | 9. | |
| 10. | Subtract line 9 from line 8. If the result is zero or less, enter -0-. | 10. | |
| 11. | Enter the **larger** of line 4 or line 10. | 11. | |
| 12. | Is the amount on line 11 of this worksheet more than the amount on line 1? | | |
| | ☐ **No.** Subtract line 11 from line 1. Enter the result. | | |
| | ☐ **Yes.** Enter -0-. } | 12. | |

**Next,** complete Forms 8839, 8396 and/or 8859 where applicable. Use the amount from line 12 above in place of the amount from Form 1040, line 48 or 1040A, line 31. Then, go to line 13 below.

| | | | |
|---|---|---|---|
| 13. | Enter the total of the amounts from Form 8839, line 14; Form 8396, line 11; and Form 8859, line 11. | 13. | |
| 14. | Enter the amount from line 10 of the Child Tax Credit Worksheet above. | 14. | |
| 15. | Add lines 13 and 14. Enter this amount on line 11 of the Child Tax Credit Worksheet above. | 15. | |

      **Railroad employees.** Include in the total on line 6 above any of the following taxes.
- Tier 1 tax withheld from your pay. This tax should be shown in box 14 of your form(s) W-2 and identified as "Tier 1 tax".
- If you were an employee representative, 50% of the total Tier 1 tax and Tier 1 Medicare tax you paid for 2001.

SALLYJIM 433 PM

| Form **1040** | **Rate Reduction Credit Worksheets** | **2001** |

| Name | Taxpayer Identification Number |
| **Sally Jim** | -2393 |

## Rate Reduction Credit Worksheet - Form 1040, Line 47 or 1040A, Line 30

**Before you begin:**

- If you received (before offset) an advance payment of your 2001 taxes equal to the amount shown below for your 2001 filing status, **stop.** You cannot take the credit because you have received the maximum amount of the credit.
  - Single or married filing separately --- $300
  - Head of household --- $500
  - Married filing jointly or qualifying widow(er) --- $600
- If you, or your spouse if filing a joint return, can be claimed as a dependent on another person's return, **stop.** You cannot take the credit.
- If you were a nonresident alien for any part of 2001, you cannot take the credit unless your filing status is married filing jointly
- If you received (before offset) an advance payment and you filed a joint return for 2000, you and your spouse are each considered to have received one-half the payment.
- If you received Notice 1275, 1276, or 1277, have it available.  The notice shows the amount of your advance payment (before offset).

| | | |
|---|---|---|
| 1. | Enter the amount from Form 1040, line 39 or 1040A, line 25. If line 39, or 25, is zero or blank, **stop;** you cannot take the credit | 1. | 13,540 |
| 2. | Enter the amount shown below for your filing status. | 2. | 10,000 |
|   | • Single or married filing separately --- $6,000 | | |
|   | • Head of household --- $10,000 | | |
|   | • Married filing jointly or qualifying widow(er) --- $12,000 | | |
| 3. | Is the amount on line 1 less than the amount on line 2? | 3. | 500 |
|   | **No.**  Enter: $300 if single or married filing separately; $500 if head of household; $600 if married filing jointly or qualifying widow(er) | | |
|   | **Yes.** Multiply the amount on line 1 by 5% (.05). Enter the result. | | |
| 4. | Enter the amount from Form 1040, line 42 or 1040A, line 26 | 4. | 2,029 |
| 5. | Add the amount from Form 1040, lines 43 through 46 or 1040A, lines 27 through 29. Enter the total | 5. | 0 |
| 6. | Subtract line 5 from line 4. If the result is zero or less, **stop;** you cannot take the credit | 6. | 2,029 |
| 7. | Enter the **smaller** of line 3 or line 6 | 7. | 500 |
| 8. | Enter the amount, if any, of your advance payment (before offset). If filing a joint return, include your spouse's advance payment with yours | 8. | 0 |
| 9. | **Rate reduction credit.** Subtract line 8 from line 7. Enter the result here and, if more than zero, on Form 1040, line 47 or 1040A, line 30. If line 8 is more than line 7, you do not have to pay back the difference | 9. | 500 |

## Tax Computation Worksheet for Certain Dependents and Nonresident Alien Individuals

**Use this Worksheet to figure your tax only if:**

- Filing form 1040, and you, or your spouse if filing jointly, can be claimed as a dependent on someone else's 2001 return and you did **not** receive (before offset) an advance payment of your 2001 taxes.
- Filing Form 1040NR, and you **did** receive an advance payment of your 2001 taxes.

| | | |
|---|---|---|
| 1. | Figure the tax on the amount of Form 1040, line 39 (Form 1040NR, line 38) (or the applicable line of the worksheet, schedule, or form listed below). Use the Tax Table or Tax Rate Schedules, whichever applies | 1. | |
| 2. | Is the amount on line 1 more than the amount shown below for your filing status? | 2. | |
|   | • Single or married filing separately --- $900 (Form 1040NR, filing status box 1, 2, 3, 4 or 5 --- $600) | | |
|   | • Head of household --- $1,500 | | |
|   | • Married filing jointly or qualifying widow(er) --- $1,800 (Form 1040NR, filing status box 6 --- $1,200) | | |
|   | ☐ **Yes.** Enter: $300 if single or married filing separately; $500 if head of household; $600 if married filing jointly or qualifying widow(er). | | |
|   | ☐ **No.** Divide the amount on line 1 by 3.0.  (Form 1040NR, multiply the amount on line 1 by 50% (.50)) | | |
| 3. | Subtract line 2 from line 1. (Form 1040NR, add lines 1 and 2).  Enter the result here and on Form 1040, line 40 (Form 1040NR, line 39), (or the applicable line of the form, worksheet, schedule, or form listed below) | 3. | |

**Special Rules.** If you use:

- **Capital Gain Tax Worksheet,** use the worksheet above to figure the tax on lines 4 and 14 of the Capital Gain Tax Worksheet.
- **Schedule D, Part IV,** use the worksheet above to figure the tax on lines 25 and 39 of Part IV. If you use the **Schedule D Tax Worksheet,** use the worksheet above to figure the tax on lines 15 and 36 of the Schedule D Tax Worksheet.
- **Schedule J,** use the worksheet above to figure the tax on line 4 of Schedule J.
- **Form 8615,** use the worksheet above to figure the tax on lines 15 and 17 of Form 8615.
- **Other forms or worksheets** that require you to figure the tax using the 2001 Tax Table or Tax Rate Schedules, use the worksheet above to figure the tax on any line that would otherwise be figured using the 2001 Tax Table or Tax Rate Schedules.

SALLYJIM  Jim, Sally

███ -2393

# Federal Statements

4:41 PM

### Form W-2, Box 12

| Description | Amount |
|---|---|
| Section 401(k) contributions | $ 2,888 |
| Total | $ 2,888 |

SALLYJIM JASPM

| Form **1040** | | Salaries & Wages Report | | | **2001** |

Name: **Sally Jim**

Taxpayer Identification Number: **-2393**

| T/S | Employer | Federal Wages | Federal Withheld | Soc Sec Wages |
|-----|----------|---------------|------------------|---------------|
| A | | 25,990 | 1,760 | 28,878 |
| B | | | | |
| C | | | | |
| D | | | | |
| E | | | | |
| F | | | | |
| G | | | | |
| H | | | | |
| I | | | | |
| J | | | | |
| K | | | | |
| L | | | | |
| M | | | | |
| **Taxpayer** | | | | |
| **Spouse** | | | | |
| **Totals** | | 25,990 | 1,760 | 28,878 |

| | Soc Sec Withheld | Medicare Wages | Medicare Withheld | Allocated Tips | Advanced EIC | Dep Care Ben | Other, Box 14 |
|---|---|---|---|---|---|---|---|
| A | 1,790 | 28,878 | 419 | | | | |
| B | | | | | | | |
| C | | | | | | | |
| D | | | | | | | |
| E | | | | | | | |
| F | | | | | | | |
| G | | | | | | | |
| H | | | | | | | |
| I | | | | | | | |
| J | | | | | | | |
| K | | | | | | | |
| L | | | | | | | |
| M | | | | | | | |
| **Taxpayer** | | | | | | | |
| **Spouse** | | | | | | | |
| **Totals** | 1,790 | 28,878 | 419 | | | | |

| | State | State Wages | State Withheld | Name of Locality | Local Wages | Local Withheld |
|---|---|---|---|---|---|---|
| A | | 25,990 | | | | |
| B | | | | | | |
| C | | | | | | |
| D | | | | | | |
| E | | | | | | |
| F | | | | | | |
| G | | | | | | |
| H | | | | | | |
| I | | | | | | |
| J | | | | | | |
| K | | | | | | |
| L | | | | | | |
| M | | | | | | |
| **Taxpayer** | | | | | | |
| **Spouse** | | | | | | |
| **Totals** | | 25,990 | | | | |

# Exhibit 6

MICCOSUKEE TRIBE OF INDIANS OF FLORIDA
SPECIAL GENERAL COUNCIL MEETING
THURSDAY, AUGUST 03, 2000
10:00 A.M.

**Item #01. Roll Call**

A special meeting of the Miccosukee General Council convened at the Chickeechobee Council grounds on Thursday, August 03, 2000.

Chairman Cypress announced quorum had been achieved at 10:05 a.m. with 27 voting members present. He requested Treasurer Billie present the opening remarks.

Treasurer Billie stated there were 27 voting tribal members present with five (5) clans represented. The clans represented were as follows: Bird, Panther, Wind, Otter and Tahkoshathee. He requested in consideration of the elderly and infirmed, the General Council keep their remarks to the topic at hand.

Lawmaker Cypress advised General Council to behave accordingly and if someone is presenting their comments they should wait for that person to finish speaking and not interrupt them. He urged General Council to utilize the microphones, when the microphones are not used, it is difficult for the recording secretaries to hear the comments being made therefore they are unable to duly note these comments. He stated all the comments made by General Council are important therefore they should allow each other the opportunity to present their comments/concerns without interruption.

Chairman Cypress announced the following Officers of the tribe present:

| | | |
|---|---|---|
| Billy Cypress | - | Chairman |
| Jasper Nelson | - | Assistant Chairman |
| Max Billie | - | Treasurer |
| Andrew Bert, Sr. | - | Secretary |
| Jerry Cypress | - | Lawmaker |

Recording Secretaries for the meeting were Diane Cypress, Assistant Chairman's Secretary and Dee Dee Kelly, Treasurer's Secretary.

**Item #02. Approval of Agenda**

Chairman Cypress reviewed the Agenda for General Council. He explained the General Council Minutes (for May meeting) were not completed yet due to unforeseen circumstances, it was being worked on at this time. He asked if General Council wanted to review this at a later date or review during General Discussion (if submitted in time).

He explained if General Council wanted to change this item, then they would have to make a motion for the changes to the Agenda.

Connie Jim motioned to accept the Agenda with Item #03 (Reading and Approval of Minutes) to be moved to Item #16 (General Discussion); seconded by Andy Buster. Motion carried with a vote of 17 for, 00 opposed and 00 abstention.



EXHIBIT
30

1

L000442
L000442

SGCMTG.AUGUST2000

Chairman Cypress stated the Chickee Builders are an example, they need liability insurance for the type of work they are in, and this liability insurance would cover them as well as their employees.

Chairman Cypress stated a few years ago when the grass fires were burning close to the gaming hall, business went down, we had insurance coverage and we filed a claim. After our claim was reviewed and substantiated, the gaming hall was reimbursed for loss revenue during this time period.

Chairman Cypress stated at every General Council meeting, the tribal members are asked to not claim the NTDR monies as income when applying for credit. Distribution monies are non-taxable NTDR. He stated if the IRS were to find out about these monies then we could end up being taxed, this would mean the tribal members would have 33% of the NTDR monies deducted to cover this tax.

Chairman Cypress stated as the Hotel business grows, there is a need for more services for the guests, as a result of this, they are looking into having a Western Union and Check Cashing office located there. There has been an increase of wealthy customers staying at the Hotel, these people want to bring in substantial amounts of money to be used during their gaming activities. He stated they are looking into having them open a type of account where they place any amount of money they want and then when they play the gaming components, the amount will be deducted from this account. He stated at the end of their stay, if they have any funds left in their account, they can cash out and receive their balance.

Chairman Cypress reported the owners of Dade Corners have again approached the tribe stating their interest in selling the business. He stated in the past the tribe has presented them with our purchasing price but they were not interested and had declined our offer. He stated the owners were informed this proposal would have to be presented to General Council, who have the final say and they would be informed of the decision. He stated other parties have approached the tribe with interest in selling their property, the Business Council is currently reviewing these proposals to see if the lands could be of use to the tribe, if so, these will be presented to General Council for their review.

Chairman Cypress reported owners of the land north of the Port of the Islands are interested in selling to the tribe, this would encompass 200 acres. He stated they have been informed this proposal would be reviewed and an answer would be given.

Chairman Cypress reported Bobby Clay had property located east of his camp, which he was interested in selling for $15,000. He stated the property was looked at, it was determined the tribe could place billboards there for advertising the tribal enterprises. He stated the property was purchased for the asking price and is now owned by the Miccosukee tribe's.

Chairman Cypress asked if there were any questions regarding the report.

Don Osceola presented questions regarding the check cashing.

Chairman Cypress reported "Homestead Property" has donated 2 acres to the tribe.

Chairman Cypress reported South Florida Water Management (SFWM) is in the planning stages of building a bridge (ranging from the thirty-mile bend to Krome Avenue), the intention is for better water flow.

## Item #06. Legal Counsel Report

Chairman Cypress stated legal counsel will be presenting the report, he had included some of the items in his earlier report but Mr. Lehtinen will be covering these in more depth. Report, questions and comments were as follows.

L000443
L000443