IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No.: 1:14-cv-22441-CMA |
| ) | |
| SALLY JIM ) | |
| Defendant. ) | |

**UNITED STATES' REPLY IN SUPPORT OF ITS THIRD RENEWED MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

In this case, the United States seeks to reduce Sally Jim's federal tax assessments to judgment, primarily income taxes on per capita distributions of gaming revenue that Sally Jim received from the Miccosukee Tribe of Indians of Florida. Sally Jim and the Miccosukee Tribe[1] filed a response in opposition to the United States' motion for summary judgment. ECF No. 159. Although the Tribe has had over a year to prepare its opposition, the Tribe's response failed to include any evidence showing that the distributions from the Tribe were anything other than per capita distributions of net gaming revenue, which Congress clearly intended to tax in the hands of the recipients, regardless of the recipients' status as tribal members. In particular, the Tribe does not dispute that it routed money from its gaming facility to individual Tribal members with no regard for that members' need. The facts show that, for each quarter in 2001, Sally Jim lined up outside the Administration office and received an envelope full of approximately $50,000 in

---

[1] In this reply, the United States collectively refers to Sally Jim and the Miccosukee Tribe as "the Tribe."

cash, which she was told to hide from the IRS. Jim owes tax on these distributions as well as penalties for failure to pay tax and failure to file a tax return.

There can be no genuine dispute of material fact that the distributions are lavish and extravagant, that the distributions are not general welfare, and that the distributions are not provided subject to specified guidelines. The uncontroverted evidence disproves the Tribe's suggestion that some of the distributions are not Sally Jim's. Finally, the Tribe's new argument that it or Billy Cypress have sole authority to determine the laws applicable to the Tribe ignores longstanding precedent that Congress has plenary power over tribes (and that courts maintain jurisdiction to interpret the law). The issues in the United States' motion for summary judgment are ripe for this Court's determination, and there is no need to grant the Tribe additional time to gather evidence that it failed to attach to its response or invent new defenses. The Court should enter summary judgment in favor of the United States.

**1.      Sally Jim Has Admitted to the Amount of Distributions**

There can be no dispute at this stage in the litigation that Sally Jim received $272,000 in distributions from the Miccosukee Tribe. Sally Jim filed a tax return stating that she received $272,000 in "benefits from Indian welfare payments." ECF No. 156-1 ("SOF") ¶ 4. The Tribe attempts to controvert this admission by arguing that some undefined portion of this amount belonged to Sally Jim's family members. The Tribe admits that Sally Jim submitted a tax return listing this amount but notes that Jim "has a ninth grade education." ECF No. 159-1, at ¶ 4. Jim, however, submitted the return with the assistance of previous counsel. ECF No. 156-7, Ex. 11 ("SL Dep.") at 92:12-15 (stating that Bernardo Roman helped prepare the return). Just because Jim and the Tribe have new counsel does not mean that she can abandon the admissions made under previous counsel. *See Blanchard v. City of Birmingham*, No. CV-10-BE-2250-S, 2013 WL

169285, at *1 (N.D. Ala. Jan. 15, 2013) ("To the extent that its new counsel attempts a second bite at the proverbial apple by disagreeing with the work performed by previous counsel, the court does not find that tactic acceptable. Once a defendant admits certain facts, it cannot hire new counsel and expect the court to wipe those admissions clean."). If Jim or the Tribe had evidence that a portion of Jim's distributions belonged to others, they were required to produce that evidence during discovery and cannot now argue that the distributions were someone else's. *See* SL Dep. 93:7-10 ("Q. Do you have any reason to doubt that [$272,000] is the correct amount of the total amount of distributions that you received in 2001? A. No, I don't.").[2]

The fact that the Tribe, in rare instances, may have denied distributions to unfit parents does not render Jim's distributions anything other than taxable income to her. The Tribe argues that some undefined portion of the distributions is not income to Jim because the Tribe *may* have denied *future* distributions based on Jim's use of the funds. ECF No. 159, at 15. The fact that future distributions might theoretically be jeopardized does not controvert the undisputed facts that Jim had unfettered use of the distributions at issue and in fact claims to have spent them all on household expenses. "In determining whether a taxpayer enjoys 'complete dominion' over a given sum,. . . [t]he key is whether the taxpayer has some guarantee that he will be allowed to keep the money." *Comm'r v. Indianapolis Power & Light Co.*, 493 U.S. 203, 210 (1990). Here, there is no dispute that Jim was guaranteed to keep the distributions, only a dispute whether her

---

[2] The Tribe's decision to wait until summary judgment to contest the amount at issue is not harmless. The United States subpoenaed and was prepared to depose Alexander Osceola, Jim's husband, on this issue, but he left the deposition site prior to his deposition. Had the United States understood that Jim would attempt to abandon her admission, the United States would have pursued this issue vigorously in discovery.

use of such distributions could jeopardize future payments. The Tribe cannot now dispute the amount at issue in this case.

**2.     The Tribe's Distributions Are Not Excludable as General Welfare**

In interpreting the statutes at issue here, the Court must effectuate the will of Congress, not the Tribe's desired interpretation of the statutes and tax law.  Congress has plenary power over matters involving Indian tribes. *E.g.*, *United States v. Billie*, 611 F. App'x 608, 611 (11th Cir. 2015).[3] While the Court should apply the canon of construction to interpret laws passed for the benefit of Indians in their favor, the Court must also recognize other canons such as "the canon that warns [courts] against interpreting federal statutes as providing tax exemptions unless those exemptions are clearly expressed." *Chickasaw Nation v. United States*, 534 U.S. 84, 95 (2001). Interpreting a statute in favor of a tribe does not mean that courts must substitute the tribe's interpretation for any ambiguous provision, as the Tribe suggests. ECF No. 159, at 6. Rather, the Court must employ a reasonable construction of the statute in accordance with congressional intent, even where the canon is codified in the applicable statute. *Maniilaq Ass'n v. Burwell*, No. CV 15-152 (JDB), 2016 WL 1118256, at *4 (D.D.C. Mar. 22, 2016) ("[T]he canon's force may be overcome by 'other circumstances evidencing congressional intent.'"); *see Little Six, Inc. v. United States*, 280 F.3d 1371, 1376 (Fed. Cir. 2002) ("[T]he Indian canon could not overcome both the evidence of congressional intent and 'the canon that warns us against interpreting federal statutes as providing tax exemptions unless those exemptions are clearly expressed.'").

---

[3] Congress did not delegate its authority over the Tribe to Billy Cypress. ECF. No. 159, at 20. Any such delegation would require an express statement, which the Tribe has not identified. *E.g.*, *N. Cheyenne Tribe v. Hollowbreast*, 425 U.S. 649, 655-56 (1976) (collecting authorities).

Congressional intent is clear that per capita distributions bearing no relation to a tribal member's need are not "general welfare," most certainly not when the payments are distributions from net gaming revenue. *See* ECF No. 156, part II; 26 U.S.C. § 3402(r); *Campbell v. Comm'r*, 28 F. App'x 613, 615 (8th Cir. 2002).

Here, the Tribe tries to equate "general welfare" with "promotion of the common good" rather than its widely accepted meaning of based on need. ECF No. 159, at 9. Having nothing to cite supporting this proposition, the Tribe cites a Treasury Regulation addressing § 501(c)(4) organizations which have nothing to do with this case.[4] The Court should not find ambiguity where there is none and should not substitute the Tribe's desired definition of "general welfare" with one grounded in case law and the acts of Congress.

The Tribe has failed to establish a disputed issue of material fact regarding the source of distributions. The source of the distributions is an issue of fact, not law. The United States' introduced evidence demonstrating how money flowed from the Tribe's gaming operations into the envelopes full of cash handed out to tribal members. SOF 9-11. Instead of pointing to any evidence controverting the United States' evidence,[5] the Tribe incorrectly argues, without citation, that the source of funds is a legal conclusion. That the distributions originated from the net revenue of the Tribe's gaming activity is a fact, and that fact is undisputed.

---

[4] To the extent the Tribe wants to pursue this analogy, it does not help the Tribe's cause. Section 501(c)(4) differentiates between organizations making payments to meet a community need and payments that inure to the benefit of an individual, the latter of which are not promoting social welfare and thus not operated for the common good. *E.g., Police Benev. Ass'n of Richmond, Va. v. United States*, 661 F. Supp. 765, 772-73 (E.D. Va.), *aff'd*, 836 F.2d 547 (4th Cir. 1987)

[5] *See* Local Rule 56.1 ("All material facts set forth in the movant's statement filed and supported as required above will be deemed admitted unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record.").

The Tribe states that it is entitled to deference on its designation of the payments as "general welfare;" however, the Tribe has no contemporaneous evidence that it considered the payments general welfare nor that it was attempting to meet tribal members' needs. Rather the contemporaneous evidence shows the Tribe provided the payments equal to each member based solely on what was available for distribution, the whole time seeking to hide the payments from the IRS. The characterization of the payments as general welfare is a recent phenomenon, a position the Tribe has adopted for litigation purposes.[6] A government's litigating positions, including the Tribe's, are not entitled to deference when they are merely "*post hoc* rationalizations" for the government's actions. *See Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 156 (1991). Furthermore, nothing about the distributions suggests they were at all tailored to meet tribal members' needs or accomplish any of the asserted goals. ECF No. 159, at 10. In particular, the distributions were provided in cash, and the Tribe did not exercise any control over how the payments were used. The Tribe did not require members to reside on tribal lands, attend cultural events, or speak the Tribe's language as part of its distribution scheme. Thus, the Tribe's argument that the Court should defer to its designation of the payments as general welfare fails.

3.    **The Distributions at Issue Are Lavish and Extravagant.**

As the Eleventh Circuit already held, distributions of the magnitude at issue are not welfare. The Tribe tries to blunt this direction from the circuit court by arguing that the court did

---

[6] The Tribe was at all relevant times aware that general welfare could be excluded from income, but even as late as at least 2010, the Tribe filed an appeal characterizing payments for its programs *other than the per capita distributions* as general welfare, failing to characterize the payments at issue here as general welfare. Docket No. 46-1, at 50, *United States v. Billie*, No. 14-20938 (S.D. Fla. Dec. 10, 2014).

not have the benefit of "full briefing." ECF No. 159, at 5 n.2. To the contrary, both sides briefed the issue after the Tribe raised it in the appellant's reply brief. *United States v. Billie*, No. 14-13843 (11th Cir. Nov. 25, 2014).

The payments here are obviously lavish and extravagant. This conclusion is supported by more than common sense. As noted in our motion, Sally Jim's distributions were approximately seven times the median household income for Florida in 2001. ECF No. 156, at 22-23.[7] As the Tribe alluded to, lavishness and extravagance depends on the facts and circumstances of a given payment. *E.g.*, *Babcock Ctr., Inc. v. United States*, No. CA 3:11-01721-CMC, 2013 WL 1857688, at *5 (D.S.C. May 2, 2013). Here, the Tribe fails to identify any evidence of a fact or circumstance justifying the excessive payments at issue, especially considering that the Tribe also provided Jim with housing and healthcare and had other programs available to meet Jim's needs. The Tribe states without citation to any probative evidence that members are "wholly dependent" on the Tribe. ECF No. 159, at 10. This unsupported statement is insufficient to establish that the envelopes full of cash provided to Jim were not excessive. SL Dep. at 33:15-21. And as emphasized above, there were no conditions placed on the distributions, and no restrictions on the use of funds for lavish or extravagant purchases. *See* ECF No. 156-6, at 49-50. While the Tribe encouraged members not to spend the distributions frivolously, the Tribe also instructed members: "[T]he best thing that tribal members can do in order to stay out of trouble with the IRS is to not think of this as real money and or income. They should think of this as

---

[7] Jim claims to have spent all her distributions on household expenses. The payments here vastly exceed any estimate of necessary household expenses. *See In re Ivory*, 269 B.R. 890, 906 (Bankr. N.D. Ala. 2001).

money they can spend without accounting for it . . . ." ECF No. 156-6, at 104. Under the facts and circumstances here, there can be no question that the payments were lavish and extravagant.

**4.     The Tribe's Distributions Are Not Income From the Land**

The income-from-the-land exception does not apply here for two different reasons. First, the exception, where it applies, does not exempt income to individuals from lands held in trust communally. Second, the income-from-the-land does not exempt income from commercial operations such as gaming. As described in the United States' motion for summary judgment, the income-from-the-land exception and the statutes the Tribe cites in support of its arguments do not apply here and do not exempt from tax payments from the Tribe to individual tribal members, regardless of the source of the payments. ECF No. 156, at 23-28 (citing 25 U.S.C. §1750e; 25 U.S.C. § 459e).

Faced with the inapplicability of the plain language of these statutes, the Tribe's new argument—that the Court must substitute the plain language with the Tribe's interpretation of these statutes—stretches the rules for statutory construction beyond their breaking point. As referenced above, canons of construction cannot be used "to create favorable [tax] rules for Indians" in "the absence of a definitely expressed exemption" from tax. *See Uniband, Inc. v. Comm'r*, 140 T.C. 230, 244 (2013) (finding that treaty language such as "there shall be no tax or other duty levied or assessed upon the property" does not create a "blanket exemption from Federal income tax on all income"). The statutes identified by the Tribe unambiguously do not apply; therefore resort to Indian canons of construction  or substitution of the Tribe's desired interpretation are inappropriate.

The Tribe's attempt to bolster its income-from-the-land argument by referring to the Tribe's tax on gross revenues is also unavailing.  ECF No. 159, at 25.  The Tribe argues that the

source of distribution includes "fuel tax revenues" as well as "revenues generated by all enterprises located on tribal trust land, including . . . gaming and other resort revenues." ECF No. 159, at 25-26. The Tribe's representative testified under oath that enterprises other than gaming "don't make any money." ECF No. 156, at 5 n.2. This is undisputed. The Tribe has produced no evidence controverting this statement or justifying any assertion that the distributions are anything other than distributions of net revenue from gaming. Similarly, the Tribe has not substantiated any claim that the distributions arise from the land rather than commercial activity. *E.g.*, *Campbell v. Comm'r*, T.C. Memo.1997–502. The Tribe's distributions are not income from the land, and even if they were, the Tribe has not identified any exemption that applies to payments from the Tribe to its members.

## CONCLUSION

The Court should enter judgment in favor of the United States and against Sally Jim for the full amount of the tax assessments, interest, and penalties set forth in the United States' motion for summary judgment. The undisputed facts establish that the distributions were not provided pursuant to a general welfare program but rather were provided pursuant to a scheme to evade directly applicable taxes on distributions of net gaming revenue.

May 2, 2016                              Respectfully submitted

                                         CAROLINE D. CIRAOLO
                                         Acting Assistant Attorney General
                                         Tax Division

                                         By: s/ William E. Farrior
                                         ROBERT L. WELSH
                                         S.D. Fla. Bar No. A5500117
                                         WILLIAM E. FARRIOR
                                         S.D. Fla. Bar No. A5501479
                                         U.S. Department of Justice
                                         Trial Attorneys, Tax Division

Post Office Box 14198
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 514-6068
Facsimile: (202) 514-9868
Robert.L.Welsh@usdoj.gov
William.E.Farrior@usdoj.gov

Of Counsel:

WIFREDO A. FERRER
United States Attorney

13843560.1

CERTIFICATE OF SERVICE

    I hereby certify that on May 2, 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF and that it will be served accordingly on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

    <u>s/ William E. Farrior</u>
    WILLIAM E. FARRIOR
    Trial Attorney, Tax Division
    U.S. Department of Justice
    Post Office Box 14198
    Ben Franklin Station
    Washington, D.C. 20044
    Telephone: (202) 616-1908
    Facsimile: (202) 514-9868
    William.E.Farrior@usdoj.gov

13843560.1